The next case this morning is number 519-0532, Estate of Van Dyke v. Milner et al. Arguing for the appellant Jacob Wendling as administrator of the Estate of Ann Van Dyke is Jared Beasley. Arguing for the appellees Chad Milner and Clay County is Gerard Cook. Each side will have 15 minutes for their argument. The appellant will also have five minutes for rebuttal. Please note only the clerk is permitted to record these proceedings. Morning counsel are we ready to proceed? I am your honor. I'm sorry I don't know if it came across but I the network went down about five minutes ago. I'm back and I think everything's been resolved but I'm ready to go. Good morning. Good morning. If something goes wrong we'll pause and make sure everything gets taken care of. So Mr. Beasley you ready to proceed? I am. Then go right ahead. Thank you. May it please the court Mr. Cook we we have an interesting issue I think for the for the court to consider and the issue is quite simply have we alleged facts sufficient to implicate the domestic violence act and as both sides have pointed out in the brief there there's really no question the defendant in this case Milner certainly had immunities by virtue of his job. The question is whether he's completely immune under 4102 or 4107 of the tort immunity act or does the immunity section of the domestic violence act apply which would only immunize the defendant for negligence but still subject him to liability under the heightened standard of Wilflin one. I think it's also important to remember this is an appeal from a motion to dismiss so at this stage all well pleaded facts are accepted as true for the purposes of that motion and all reasonable inference. If we could pause the time. It appears we have lost him or he is at least frozen. Again I apologize strange times so really the question is do we does the domestic violence act apply and so first we look at the statute we consider was defendant Milner engaged in an act of omission or commission in rendering emergency assistance or otherwise enforcing the domestic violence act and the facts of the case are that we know is that Ann Van Dyke was a victim of domestic violence. Of that there's really no question she was killed by a member of her household. We know that Ann was a person protected under the act and we know that a 9-1-1 call was made and that that 9-1-1 call was ignored for more than an hour. So it seems pretty obvious that deputy Milner committed an act of omission and failing to enforce the act or respond to an emergency under the plain language of the statute. Mr. Beasley what did the 9-1-1 call say? It said nothing. It was an open call so I guess without getting into the weeds too much basically kind of the way we see the events and the defense might have a different position on this but basically she was shot multiple times. The theory is that she was shot once and made the call and was unable to speak. It was a non-fatal shot and then later some period of time later the Mark Lane the boyfriend had left came back and killed Miss Van Dyke and killed himself in the kitchen. So yeah and I'm glad you brought that up because that actually dovetails nicely into the next thing that I was going to say which is the defendant will argue that the call because Milner didn't know the call was for domestic violence that the act doesn't apply. And again if you look at the words of the statute the plain language you'll notice there's no subjective knowledge component in section 305. It just says any act of omission or commission in rendering emergency assistance and that subjects you to exception of the absolute immunity of 4102. So if the defendant had responded to the call saw what was happening and left and the same thing resulted there's no question the act would apply. In fact in Moore versus Green and we cited that in our brief the Illinois Supreme Court faced exactly this circumstance. So I think it's important to look at Moore. In Moore the facts were really similar. A woman calls 9-1-1 and tells them her husband is in violation of an order of protection and he's in the house. Dispatch relayed the information to the officers. The officers acknowledged receipt. The officers drove to the house. The officers left without investigating or assisting and the plaintiff was shot by her husband and subsequently died. Now as counsel in the Moore case so the wife had an op so that puts the law enforcement on notice. This is a domestic violence case. In the instant case, the Van Dyke case, there's nothing to put them on notice. There's domestic violence. There's no op. There's no prior call. There's nothing that puts them on notice other than an open call. There is no op in this case. I would agree with you that is correct. There was an op in Moore. There's no doubt about that. But there's also nothing in the statute that would require an op prior to nothing in the statute that would indicate that a precursor to having this statute apply is the existence of an op. I agree with you on that point. But in the Moore case, she said I have an op. He's in the house. The 9-1-1 responder knew that domestic violence was ongoing and we don't have that in our case, correct? That is correct. We do not have that in our case. We do not have that in our case and that's actually what I was going to point out with regard to the Moore case. It's factually identical with the exception of obviously what you folks are pointing out which is she was unable to articulate the reason for her emergency call so she wasn't able to tell the dispatcher. And you're right, that is the distinction or the difference between the two. But simply burying your head in the sand and not doing your job to find out if it was in fact domestic violence doesn't insulate defendant Milner from the act. Essentially the defense position is if we don't know the person is a victim of domestic violence, then we're free to ignore them without consequence. Now, and this might seem a tick odd, but if we consider the converse and think about it, what if me after learning all these things or Mr. Cook after learning all these things knows the law and our car was stolen and they call and they say I'm the victim of domestic violence because I want a response. And I know that they're required to if I tell them it's domestic violence. Well, then does the domestic violence act apply? Then do I fit into this exception? Well, of course not. In that circumstance, the defendants would argue subjective knowledge of the officer doesn't turn a car theft into domestic violence. And here the lack of knowledge doesn't make clear domestic violence something else. The subjective knowledge of the officer is not the defining characteristic of whether or not the person is a victim of domestic violence and whether or not the act applies. But while we're talking about the subjective knowledge component, I think it is one of the issues that we disagree on. You can find that section laid out in 304, which is entitled assistance by law enforcement officer. And it lays out a list of things an officer should do when he or she has an quote reason to believe, close quote, that a person has been abused, neglected or exploited by a family or household member. And that's the only section of the act that speaks to this knowledge component. But 304 simply lays out the responsibilities of the officer. It doesn't modify section 305, which contains no such language. 305 simply states, the immunity section applies to any act of omission or commission in rendering emergency assistance. It doesn't have any modifications. Mr. Beasley, if the victim in this case had called in and said, my car is being vandalized and they don't come and the vandals eventually shoot her, the state would have had no recourse because the domestic violence special immunity did not kick in. Here, isn't it the same? I mean, she didn't tell him, Hey, this is domestic violence. So why isn't this the same as a call for any other complaint to the sheriff's office with no special immunity? Well, uh, you're, you're correct. First of all, yes. Uh, if somebody breaks in or, you know, if it's not domestic violence, clearly the domestic violence act applies, but, but here again, we have clear, uh, domestic violence. We have, we know that now, but the officers did not know that then we know that now from looking in retrospect, but how did the nine one one officer or Milner know, Hey, this is a domestic violence. I need to get out there quickly. There's nothing on notice. Okay. Um, so what, what we've got, um, and we, we allege, uh, a number of facts here and the, the defendant in their brief actually, actually says, um, that there are a number of possibilities that exist. You know, you've got a, you've got a call, an open call from a landline. So when you, when you think about that, it's not a, you know, what we, uh, casually refer to as, uh, you know, a pocket dial with your cell phone. So we know it's not that we know, uh, that we know that they called back and received a busy signal indicating that the, uh, that the line was open. Um, we know that it was an emergency call. We know that, uh, that there was no sound. There wasn't, there was no sound, uh, on the call. We know that the call came at about four o'clock. We know that, uh, deputy Milner was what three, four minutes away and that he knew the players involved. Again, we're at this stage, all we're, all we're entitled to the, uh, the facts and the inferences associated with those facts in our favor. I think clearly one could say, and again, we're at the, we're at the stage where we haven't taken the deposition of deputy Milner. We don't know what he knew or didn't know. We don't know if he knew that, uh, for example, uh, Mark Lane, the, the murderer, um, if he, we know that he had a history of alcohol abuse based on the, uh, on the records, but we don't know if deputy Milner was aware of that. We know he owned a bunch of guns. We don't know if deputy Milner knew that we don't know what deputy Milner knew because we haven't had an opportunity to ask him. And because, let me interrupt you. You, you made a comment that the officer knew the players involved. Um, when you said that, did he know that, um, the victim was, uh, a person who was maybe subject to domestic violence? And the follow-up question is why don't you know these things? Why don't you take the deposition? Uh, thank you, uh, for that question. But first, first thing I would say is we don't, there's nothing in the records that we have seen so far that would indicate a prior history of domestic violence. Um, uh, they did answer, uh, interrogatories and requests to produce, um, as whether or not we were allowed to take the deposition of defendant, uh, Milner. We were not because we didn't, we didn't get to proceed that far before the motion to dismiss, uh, was heard by judge McCaney, um, in Clay County. Did you ask leave to take that deposition before the hearing was held? I don't believe I did judge. Um, okay. I don't believe one of the issues raised in your brief, which seems to be central in this, uh, analysis of the law is you claim that judge McCaney read in knowledge, uh, and you don't believe that that should be done in this statute. What we're talking about, that is the police officer shouldn't have to know certain things. Um, in the case of Lacey versus Palatine, it seems that the Illinois Supreme Court has read in some kind of good faith knowledge, uh, rather than a generalized duty. Are you familiar with that case Palatine? I am judge. Okay. Could you maybe discuss that issue then for me? Well, I, I would agree that, um, there is this idea of reason to believe, um, now Lacey versus Palatine, again, that, that case involved the analysis of, so if you, if you look at the, at the section, uh, three Oh five, uh, section, it says, let me pull it up here and act any act of omission or commission by any law enforcement officer acting in good faith and rendering emergency assistance or otherwise enforcing this act. So I read that quickly, but rendering emergency assistance or otherwise enforcing this act Lacey doesn't apply in this case. And the reason why is because they were analyzing the second, uh, clause in that sentence, which is otherwise enforcing this act because there, they didn't have emergency assistance. They had the more amorphous catchall of otherwise enforcing this act. Now the, uh, Lacey also, uh, said, uh, said a number of, a number of things, um, such as there is no ongoing duty, which was in the defendant's brief, no open ended duty, I think is actually the verbiage in it. And the reason I point that out is because I would agree in Lacey, it went on for a period, a significant period of time. The officers were aware, but ultimately once you get past a certain point, the court said they're not required to, you know, to basically put this person in protective custody. And that again, was analyzing a different section of three Oh five here. We have emerge rendering emergency assistance and emergency assistance alone. We don't have to get into the otherwise enforcing because we know that there was an emergency call made and emergency assistance was called for. And now the only question is, was there, uh, was that omission in rendering this emergency assistance sufficient to indicate implicate, uh, section three Oh five. I want to cut you off there. Uh, Mr. Beasley, your time's run out. Obviously you'll have time for rebuttal. Um, Mr. Cook, are you prepared to proceed? Yes, your honor. Then go right ahead. Please. The court, Mr. Beasley. Uh, my name is Gerard Cook. I'm appearing on behalf of the defendant's reason. This case, the case involves a simple analysis. Uh, the plaintiff ignores a critical provision of the domestic violence statute, which does require subjective notice on the part of law enforcement that the incident that they're investigating, uh, involves domestic violence. Uh, section three Oh four a provides whenever a law enforcement officer has reason to believe that a person has been abused, neglected, or exploited by a family or household member. The officer show immediately used all reasonable means to prevent further abuse, neglect, or exploitation. Plaintiff goes to great lengths in his brief, uh, to set forth the rules of statutory construction, uh, particularly both parties cite to the Paris versus Fender case that says that when courts are interpreting statutes, you need to give full meaning to all sections of the statute and read in harmony. So here section three Oh four a, uh, sets forth the requirements of law enforcement under this act. This lawsuit is so simply about what the requirements are on law enforcement under this act. And under that provision, they have to have reason to believe that a person, has been abused by household or family member, i.e. that the provisions of the domestic violence act are then triggered. The facts here are simple and agreed. There's no factual dispute. The case involved this open line call. There was no information furnished to the dispatcher. We furnished discovery of all the documents involved. There is no prior knowledge of any violence here whatsoever. Uh, and yet plaintiff is now seeking to do something that no court in the state of Illinois has done to this point. And that is to apply the domestic violence act in a situation where law enforcement had no prior knowledge of there being a domestic violence, uh, situation at hand. Uh, plaintiff would have this court apply a, a standard, a strict liability standard so that whether or not the application of the domestic violence act is implicated is dependent upon facts that are discovered after the fact. Uh, and we've cited case law that you can't do that in applying the tort immunity act. It has to be, uh, applied based upon what facts are known at the time by law enforcement. And to do so, uh, would create a strict liability standard so that law enforcement when responding to any call would have to respond to it as though it was a domestic violence situation because later, uh, it may be discovered that domestic violence, uh, was implicated. It would totally eviscerate the immunities under section four dash one or two, uh, which is absolute for failure to provide adequate police protection services or prevent crimes. Plaintiff concedes here that if the domestic violence act does not apply, then section four dash one or two does apply. Uh, plaintiff erroneously argues that there is no subjective requirement under the domestic violence act, but a plain reading of the act and the explicit reading of section three or four eight says that there is, it's just a blatant misstatement by the law, by the plaintiffs. Uh, the legislative intent here is clear that law enforcement must have reason to believe that the victim has been abused by a family or household member. Even a common sense reading of this statute, even a section three dash one or four did not exist, which obviously it does. Even a three one Oh four eight did not exist. You would have to read a common sense reading into the statute that prior knowledge, um, uh, must be necessary before the act would apply. Uh, because otherwise the domestic violence act loses any meaning and eviscerates four one Oh two, because every call then would have to be responded to as though it was a domestic violence situation. Because later after the fact that might be discovered that indeed domestic violence was implicated. Um, Mr. Cook, why do you believe, why do you believe that this section of the statute at issue, um, uh, puts the word good faith into this, the statute. In other words, why, why, if, if, if the knowledge is so complete, why do we then add good faith? Well, in this case, Your Honor, there's no knowledge whatsoever. So there, there can't be a good faith belief that domestic violence was implicated. There's nothing here. Uh, and, and calls like these, these open line calls. I mean, the great majority are accidental violence. That's, that's what the police are dealing with, but it could be anything. It could, it doesn't necessarily even have to involve police. This is a 911 dispatch center that feels calls for medical emergencies. For example, person could be ill and not able to speak on the phone. Uh, it could be a kid playing with the telephone. It could be a violent situation that pointed out in the brief could be a situation where a burglar is breaking into the house. That doesn't implicate the domestic violence act. It could be the police could receive a call where the caller is screaming into the telephone that, that people are breaking into her house with the intent to kill her with weapons. And if it's not, if there's no indication, it's a family or household member that does not implicate the domestic violence act. And I would like to point out to the court, uh, just in case you touched on this earlier in the Lacey case, uh, the identical argument was made there and hit this Illinois Supreme court said the following in referring to the domestic violence act. The act is not implicated merely because someone is a protected party under the app. If this court were to hold to the contrary, we would create a generalized duty by all law enforcement agencies and personnel toward anyone who has been abused by a family member or household member, regardless of whether the police have reason to know that their services may be required. So Lacey addressed the exact arguments that the plaintiff is making here. Plaintiff is arguing that if it turns out that the, that the person who is injured or in this case murdered was a family or household member, which undeniably, uh, Ms. Van Dyke was, uh, then the domestic violence act is implicated. The Illinois Supreme court held to the contrary, you know, my Supreme court held that there has to be a reason for the police to know that their services were required and, and, uh, in a domestic violence situation. And we don't have that here. Uh, as I said earlier, this, the plaintiff here is asking this court to do something that no court has, has done in the places or the cases cited by the player in particular, he realized quite heavily in Moore versus green. It's totally an opposite, uh, in green. Uh, there was an emergency order of protection protection. And when the caller called 911, they told the dispatcher that her husband had a gun, uh, and it was threatening her. I mean, that's clearly a situation where, uh, the, uh, police knew that domestic violence was an issue here. We have nothing like that. Um, so I think it's, it's incumbent upon the court here to take a look at, at, at the Lacey case, which in which the facts are far more egregious. I mean, in Lacey, there had been an order of protection. The police were aware that there was a murder for hire plot that was being hatched by the deceased ex-husband, uh, and that they didn't provide protection in the court held that there was no duty of ongoing protection there. And that the domestic violence act did not apply. Uh, so based upon section three dash one Oh four, and also a common sense reading of the statute, there has to be knowledge on the part of law enforcement before the domestic violence act. And we simply don't have that here. And plaintiff agrees. We don't have that here. He agrees. There is no information here, uh, that domestic violence was, was implicated at all. Um, and, and, uh, plaintiff had an opportunity to conduct discovery. Uh, there's nothing here. Uh, and the domestic violence act, uh, simply does not apply. Additionally, there's another issue in our brief, which, which plaintiff did not address the fully ignored. So I assume they're conceding that, and that is that the deputy sheriff, uh, cannot be responsible under a theory of responding at superior, uh, uh, for the county, the county is not the employer of deputy sheriffs. Uh, and so the cause of action against the county must be dismissed regardless. So, uh, in summary, your honor, we're asking the court to affirm the decision of the trial court. Uh, it was a proper decision. Uh, there is no evidence here, uh, that, that law enforcement had any knowledge of a domestic violence situation. Uh, and therefore the domestic violence act is not triggered. And therefore the absolute immunity afforded to law immunity act applies in the case of subject to dismissal. Therefore we ask this court to refer. Thank you, Mr. Cook, Mr. Beasley rebuttal. Uh, thank you. Um, now three or four, there's no doubt. I would agree with Mr. Cook three or four calls for action when an officer has quote reason to believe a domestic violence situation is going on. Um, I would say to that, that, uh, defendant has admitted in his brief, and it certainly that domestic violence is certainly one of the possibilities based on the facts that we allege. Um, they also argue that there's other explanations, but three Oh four doesn't say absolute certainty. It doesn't say more likely than not. It doesn't say probably it doesn't say possibly it says quote reason to believe. Um, when you talk about reason to believe you have a, you, as we alleged in the complaint, we have an open call from an, from a, um, from a landline, not a cell phone. Um, the person is unable to speak. The line is open. The 911 operator called back, got a busy signal, um, and notified the sheriff's department to, to respond. Deputy Milner chose not to. Um, so when you, when you look at it like that, did do the facts give rise to a reasonable officer looking at the situation as a whole to determine this was a possible domestic violence situation? Sure. But moreover, with even a modicum of investigation, it would have been easily discoverable. Now I would close by saying this, and this is the most important part, I think, and I apologize for not getting to it earlier. The act is to be liberally construed to promote its underlying purpose. It's written into the statute. The legislator has instructed us not in legislative history, not in a handwritten note, not correspondence between legislatures, legislators, but in the statute itself, it's be liberally construed to promote its underlying purpose. So what are the purposes? The stated purpose again, in the statute is to expand the civil and criminal remedies for victims of domestic violence. So we must give the statute its most liberal and broad construction to expand the civil and criminal remedies for victims of domestic violence. That's the purpose of the statute. To put in a subjective component, or if we put it in to narrowly construe such a component would defeat the purpose of the statute and specifically the legislative intent. And I apologize, I can't see the timer because I'm on my phone here. I'm assuming I have a little bit of time left, but I would, I would have about two minutes. All right, I apologize. But so basically, what the defendant would do would say, would ask this court to get the Domestic Violence Act, its narrowest and most restrictive mean. And that's in spite of the clear language of the statute and the intent of the act. To the contrary, they're saying to the legislature is saying to the courts, they're saying, please make, you've got to interpret this in its liberal and its most liberal and broadest, broadest way in order to achieve the purposes for which we pass this law. And what is the stated purpose to expand the civil and criminal remedies for victims of domestic violence, because we haven't before. And again, when we talk about there was mention of this being some sort of strict liability if we allow this to proceed. And it's important to note that overturning this doesn't mean we win. It doesn't mean anything other than we get to proceed. We still have to meet this exceedingly high bar of willful and wanton conduct. And whether the defendant breached that legal duty by willful and wanton misconduct is a fact the jury should be allowed to decide after a trial on the merits. Again, it doesn't mean we win. It doesn't even make it more likely. All it does is give Anne's family a chance at justice. I think a chance they're specifically granted under Section 305 of the Domestic Violence Act. All right. Thank you. Well, thank you, counsel. Justices, you have any questions? All right. Thank you, gentlemen. We will take this matter under advisement and issue a disposition in due course. Thank you all very much. Thank you.